**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Philips Recalled CPAP, Bi-Level PAP, and Ventilator Litigation | MDL No. _____ |

**BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407**

## I. INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Movant-Plaintiff Thomas R. Starner ("Starner") respectfully submits this brief in support of his Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. The *Starner* lawsuit,[1] filed under CAFA in the Eastern District of Pennsylvania, along with similar class action and individual lawsuits filed in other federal courts,[2] arises out of the June 14, 2021 recall of certain Continuous Positive Airway Pressure ("CPAP"), Bi-Level Positive Airway Pressure ("Bi-Level PAP"), and mechanical

---

[1] *See Starner, and all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 2:21-cv-2925 (E.D. Pa.) (TJS), *filed* July 1, 2021.

[2] As of July 7, 2021, Movant identified nine additional related actions filed in federal court: (1) *Manna, and all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 1:21-cv-11017 (DJC) (D. Mass.), *filed* June 17, 2021; (2) *Shelton, and all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 1:21-cv-11076 (DJC) (D. Mass.), *filed* June 29, 2021; (3) *Griffin, and all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 1:21-cv-11077 (DJC) (D. Mass.), *filed* June 29, 2021; (4) *Oldigs, and all others similarly situated v. Philips North America LLC, et al.*, Civil Action No. 1:21-cv-11078 (DJC) (D. Mass.), *filed* June 29, 2021; (5) *Schuckit, and all others similarly situated v. Philips North America LLC, et al.*, Civil Action No. 1:21-cv-11088 (DJC) (D. Mass.), *filed* June 30, 2021; (6) *Boudreau, and all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 1:21-cv-11095 (DJC) (D. Mass.), *filed* July 1, 2021; (7) *Emmino v. Koninklijke Philips, N.V., et al.*, Civil Action No. 8:21-cv-1609 (M.D. Fla.) (MSS), *filed* July 2, 2021; (8) *Heller v. Koninklijke Philips, N.V., et al.*, Civil Action No. 4:21-cv-0111 (M.D. Ga.) (CDL), *filed* July 2, 2021; and (9) *Shrack, individually and on behalf of all others similarly situated v. Koninklijke Philips, N.V., et al.*, Civil Action No. 1:21-cv-00989 (D. Del.) (unassigned), *filed* July 2, 2021. All cases are listed on the Schedule of Actions filed herewith as Exhibit "A" and are collectively referred to herein as the "Actions." The Complaints (without exhibits) in the Actions and their related docket sheets are attached hereto as Exhibits "A-1" through "A-10."

ventilator devices manufactured by Philips prior to April 26, 2021.[3] According to Philips, the recalled devices contain polyester-based polyurethane sound abatement foam ("PE-PUR Foam") that may degrade or off-gas under certain circumstances, including when cleaned with ozone, or in high humidity and high temperature environments.[4] When degraded or off-gassed, the PE-PUR Foam puts users at risk of suffering from: "[i]rritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (*e.g.*, kidneys and liver) and toxic carcinogenic affects."[5] Philips reported to physicians that PE-PUR Foam particles "may cause irritation and airway inflammation, and this may be particularly important for patients with underlying lung diseases or reduced cardiopulmonary reserve."[6]

Defendants[7] have admitted that "based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from

---

[3] *See* Recall Notice for the following Philips devices: E30 (Emergency Use Authorization); DreamStation ASV; DreamStation ST; AVAPS, SystemOne ASV4; C Series ASV; C Series S/T and AVAPS; OmniLab Advanced Plus; SystemOne (Q Series); DreamStation; DreamStation GO; Dorma 400; Dorma 500; REMStar SE Auto; Trilogy 100 Ventilator; Trilogy 200 Ventilator; Garbin Plus, Aeris, LifeVentVentilator; A-Series BiPAP Hybrid A30; Philips A-Series BiPAP V30 Auto; Philips A-Series BiPAP A40; and Philips A-Series BiPAP A30 ("Recall Notice"), attached hereto as Exhibit "B."

[4] First Quarter Results, PHILIPS (Apr. 26, 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 27, 2021).

[5] Recall Notice; *see also* Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021); Royal Philips Update on the recall notification, https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 27, 2021).

[6] Philips *Sleep and Respiratory Care Update – Clinical information for physicians*, June 14, 2021, philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

[7] Defendants include: Koninklijke Philips N.V. ("Royal Philips") (a Dutch multinational corporation); Philips North America LLC; Philips RS North America LLC ("Philips RS"); Philips Healthcare Informatics, Inc.; Philips Holding USA, LLC; and Respironics, Inc. All Defendants are part of the Philips Group of healthcare technology businesses, including Connected Care businesses focusing on Sleep & Respiratory Care, which are controlled and wholly-owned by Royal Philips. *See* Philips 2020 annual filing with the SEC & fn. 8,

transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment."[8] Philips announced that it has received reports of specific complaints from users of its recalled devices who suffered from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

Nationwide, there are approximately 3-4 million devices affected by the Philips recall.[10] Philips has advised users of its Bi-Level PAP and CPAP devices to "[d]iscontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[11] For patients using Philips' life-sustaining mechanical ventilators, Defendants have advised the following: "DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps."[12] The Actions seek recovery for the losses sustained by all purchasers and users of the recalled devices, as well as medical monitoring damages and personal injury damages, where applicable.

The underlying facts concerning the manufacture, sale, and recall of the CPAP, Bi-Level PAP, and ventilator devices manufactured by Philips are uniform throughout the proposed class of

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/0000313216/000031321621000008/phg-20201231.htm (accessed June 30, 2021); https://www.sec.gov/Archives/edgar/data/313216/000031321621000008/phg-exhibit8.htm (accessed June 30, 2021). Philips RS has its principal place of business in Pittsburgh, Pennsylvania.

[8] *Id.*

[9] Recall Notice (Exhibit B hereto).

[10] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 27, 2021).

[11] Medical Device recall notification (U.S. only) / field safety notice (International Markets), PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 27, 2021) (Questions and answers) (emphasis in original).

[12] *Id.*

Plaintiffs in the Actions filed in various federal courts across the country. Indeed, the issue of whether the 3 million-plus recalled devices have been rendered worthless as a result of the degradation and off-gassing of the PE-PUR Foam in the devices and the resulting recall, entitling all purchasers and users to economic damages, is present in all of the Actions. In addition, all users of the recalled devices are facing risks of serious injury as a result of exposure to dangerous chemicals from the PE-PUR Foam. Addressing these common issues in a consistent manner through coordinated and consolidated factual discovery from the same set of Philips entities as opposed to potentially disparate treatment by different courts helps to serve one of the main purposes of Section 1407. And, utilizing such transfer and consolidation or coordination on issues that have nationwide significance and broad application among all Plaintiffs is prudent under the circumstances.

Further, Plaintiff Starner is in the process of serving the controlling parent, Royal Philips, in Amsterdam, Netherlands under the Hague Convention. The *Starner* CAFA complaint, like others filed in federal court, includes all Plaintiffs impacted by the recall. As was accomplished in the *Chinese Drywall Litigation* before the Honorable Eldon E. Fallon, MDL 2047 (E.D. La.), the use of this CAFA complaint as a vehicle to consolidate all Plaintiffs in a single action for service on a foreign defendant accomplishes a utility of efficiency for Plaintiffs and ultimately conserves resources once the foreign entity is properly brought into the litigation. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL 2047, 2019 WL 7558265, at *14 (E.D. La. Feb. 4, 2019) ("Service of these Omnibus Complaints through The Hague Convention resulted in substantial time and expense but created a vehicle that enabled individual claimants to efficiently file suit.").

Therefore, Movant seeks the transfer and assignment of the Actions, which all seek a finding that purchasers and users of Philips' recalled devices are entitled to damages, to the Eastern District of Pennsylvania, as well as any actions subsequently filed involving similar facts or claims. Movant also seeks that, once transferred, the Actions, and any future tag-along actions, be assigned to the Honorable Timothy J. Savage, United States District Court Judge for the Eastern District of Pennsylvania, who is currently presiding over the *Starner* action.

## II.    BACKGROUND

Philips' CPAP and Bi-Level PAP devices are used by patients throughout the United States to treat a number of sleep, breathing, and respiratory conditions, including obstructive sleep apnea, central sleep apnea, complex sleep apnea syndrome, and Chronic Obstructive Pulmonary Disease (COPD), and its mechanical ventilators are used to assist those individuals requiring invasive and non-invasive ventilation for acute and sub-acute hospital environments At an undisclosed time prior to recalling millions of CPAP, Bi-Level PAP, and ventilator devices on June 14, 2021, Philips received reports from users and also lab testing indicating that the PE-PUR Foam in the devices degrades and off-gasses under certain circumstances. Unfortunately, the absence of visible particles in the devices does not mean that PE-PUR Foam breakdown has not already begun. Philips reported that lab analysis of the degraded foam reveals the presence of harmful chemicals, including: Toluene Diamine, Toluene Diisocyanate, and Diethylene Glycol.[13] This exposure can cause serious injury that can be life-threatening or cause permanent impairment, such as organ failure and cancer. As a result, the devices have been rendered worthless, and patients are now burdened with having to expend significant sums to replace them as quickly as possible. Further,

---

[13]   Philips Sleep and Respiratory Care Update; Clinical information for physicians, https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf (accessed June 27, 2021).

Plaintiffs are facing serious injury as a result of the degradation and/or off-gassing of the PE-PUR Foam in the devices.

Defendants' disclosures make evident that there are millions of users of Philips' CPAP. Bi-Level PAP, and ventilator devices, who have suffered damages from the recall itself and from the risks of injury resulting from degraded and/or off-gassed PE-PUR Foam in the devices. Plaintiff Starner is one such user in the Eastern District of Pennsylvania, whose claims are typical of all other users. To date, nine additional Actions seeking similar relief in federal court have been filed – six in the District of Massachusetts, and one each in the Middle District of Florida, Middle District of Georgia, and District of Delaware – and most certainly numerous additional cases will follow as Plaintiffs receive notification of the recall.

The uniform impact of Philips' recall of its CPAP, Bi-Level PAP, and ventilator devices containing PE-PUR Foam on millions of purchasers and users of these devices is unquestionable. As a result of the recent disclosures and actions by Defendants, Plaintiffs' CPAP, Bi-Level PAP, and ventilator devices have been rendered worthless, forcing Plaintiffs to purchase new devices at considerable cost. In addition, users of the recalled devices have been exposed to dangerous chemicals that cause serious injury, including organ failure and cancer.

While the various Actions may contain different state law claims or seek damages for personal injuries, they all share key core factual questions: (1) whether the recalled devices are worthless as a result of the recall, entitling all purchasers and users to economic damages, and (2) whether users been exposed to risks of serious injury as a result of the degradation and off-gassing of PE-PUR Foam in the devices. These central questions are too important to the millions of purchasers and users of Philips' recalled devices to leave their determination to numerous courts across the country that could reach divergent and conflicting results. Moreover, simply because

Plaintiffs may have different damages does not weigh in favor of denying centralization. *See In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims).

Legally, the purpose of centralizing these cases is to promote the just and efficient litigation of these actions, to avoid inconsistent rulings on key and fundamental issues, and to prevent duplicative discovery or other inefficiencies that would threaten to drain judicial resources. It is not necessary that the cases are identical or that common issues predominate; all that is required are enough common questions to warrant coordination or consolidation. Federal judges are well equipped to manage centralization in cases where there are substantial differences and complexities. Often, the more complicated and voluminous situations confirm the strengths of centralization, where skilled judges can work with experienced counsel to create plans for moving otherwise seemingly complex and overwhelming cases to an efficient and successful resolution.

While the recall of Philips' devices has unquestionably impacted users in many states, the Eastern District of Pennsylvania would be an excellent and appropriate forum for this litigation. The Eastern District of Pennsylvania is an excellent court with vast experience successfully managing multidistrict litigation. Moreover, Defendant Philips RS North American, LLC has its principal place of business in Pittsburgh, Pennsylvania. In addition, headquartered in Philadelphia, the Eastern District of Pennsylvania is easily accessible, and it is centrally located within the Northeastern corridor among some of the states, from Massachusetts to Georgia, where many of the Actions have been filed. Transfer to the Eastern District of Pennsylvania for consolidated or coordinated pretrial proceedings before the Honorable Timothy J. Savage, United States District Court Judge for the Eastern District of Pennsylvania, is warranted.

## III. ARGUMENT

### A. TRANSFER OF THE ACTIONS TO ONE COURT FOR COORDINATION OR CONSOLIDATION IS APPROPRIATE UNDER 28 U.S.C. § 1407.

Transfer is appropriate when actions pending in different judicial districts involve similar questions of fact such that coordinating or consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. In relevant part, Section 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

*Id.*; *see also In re Nifedipine*, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003). The purpose of multidistrict litigation is to "eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017) (same); *In re Capital One Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1364, 1365 (J.P.M.L. 2019) (same).

Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact, and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a); *Ethicon Physiomesh*, 254 F. Supp. 3d at 1382 (transfer of related

actions to a single district for pretrial proceedings "conserve[s] the resources of the parties, their counsel, and the judiciary."); *Capital One Customer Data Sec. Breach*, 396 F. Supp. 3d at 1365 (same). Consolidation is especially important in multidistrict litigations where "the potential for conflicting, disorderly, chaotic" action is greatest. *Plumbing Fixture Cases*, 298 F. Supp. at 493.

Consolidation of actions involving common factual questions makes sense when numerous judges will be asked to address similar pretrial matters and resolve similar pretrial motions involving similar fact patterns. *See In re Fosamax Prods. Liab. Litig.*, 444 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006). Notably, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Centralization will permit all actions to proceed before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs, while ensuring that common parties and witnesses are not subjected to duplicative discovery demands." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007).

Here, there are already nine pending federal actions in five districts and many more to come. Inconsistent judicial rulings in litigation affecting millions of purchasers and users of Philips' recalled devices is precisely the type of disorderly and chaotic action that consolidation and coordination under Section 1407 was intended to prevent. The transfer of the Actions to the same court for consolidated or coordinated proceedings is appropriate because common questions of fact exist, and consolidation or coordination before one court will ensure efficient management of the litigation and avoid inconsistent rulings on these issues impacting so many Plaintiffs across the United States.

### 1. The Actions Involve Common Factual Questions.

Here, all of the Actions, and any tag-along actions, will require a determination of whether the recall of Philips' CPAP, Bi-Level PAP, and ventilator devices containing PE-PUR Foam has

rendered the devices worthless, entitling 3-4 million purchasers and users to economic damages for the losses sustained. Further, all of the Actions will require an assessment of the risks of serious injury that users are facing as a result of the degradation and off-gassing of PE-PUR Foam contained in the devices. Section 1407 does not require a majority of common factual issues as a condition for transfer, only that there are common questions presented which justify consolidation and coordination. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) ("To those defendants opposing transfer because they wish to litigate the arguably narrower or more questionable claims against them without entanglement in a litigation that they consider to be much broader in scope, we point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer."). In this case, the facts surrounding Philips' conduct in the manufacture, sale, testing, and recall of its devices applies equally to all Plaintiffs.

The fact that the Actions are based on various state law claims for damages does not preclude consolidated or coordinated discovery because the central issues – whether the recalled devices are worthless and whether they pose risks of injury to users – will be the same across all cases. Moreover, given that all of the Defendants are part of the Philips Group of companies controlled and overseen by Royal Philips, which manufactured, sold, and distributed the recalled devices, transfer to a single court is warranted. *See, e.g., In re National Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017) ("Although individualized factual issues may arise in each action, such issues do not – especially at this early stage of litigation – negate the efficiencies to be gained by centralization. The transferee judge might find it useful, for example, to establish different tracks for the different types of parties or claims. The alternative of allowing the various cases to proceed independently across myriad districts raises a significant risk of inconsistent

rulings and inefficient pretrial proceedings."); *In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) ("While there will be some unique questions of fact from bank-to-bank, these actions share sufficient factual questions relating to industry-wide bank posting policies and procedures to warrant centralization of all actions in one MDL docket."). The Panel and transferee courts have routinely dealt with complexities, including Plaintiffs with varied claims and injuries. *See, e.g., Checking Account Overdraft*, 626 F. Supp. 2d at 1335; *National Prescription Opiate*, 290 F. Supp. 3d at 1379; *c.f. In re Silicone Gel Breast Implants Prod. Liab. Litig.*, 793 F. Supp. 1098, 1099-1100 (J.P.M.L. 1992) (transfer and centralization of claims against multiple defendants by plaintiffs claiming different injuries); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1997 WL 186325, at *1-2 (E.D. Pa. Apr. 16, 1997) (more than 2,000 civil actions including claims of different types of injuries caused by products manufactured by dozens of defendants).

What is important and relevant to the Panel's decision is that transfer and consolidation or coordination will provide a consistent and uniform resolution to the common factual issues, which will facilitate the efficient adjudication of all the Actions even considering any differences that may exist. "[T]ransfer under Section 1407 has the salutary effect of placing all actions in th[e] docket before a single judge who can formulate a pretrial program that: 1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (Jud.Pan.Mult.Lit.1976); and 2) ensures that pretrial proceedings will be conducted in a manner leading to a just and expeditious resolution of the actions to the benefit of not just some but all of the litigation's parties." *Ins. Brokerage Antitrust*, 360 F. Supp. 2d at 1372; *see also Checking Account Overdraft*, 626 F. Supp.

2d at 1335. The common questions of fact that are implicated here weigh heavily in favor of consolidation and coordination.

### 2. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote the Just and Efficient Conduct of the Actions.

According to the Manual for Complex Litigation, the following four factors govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred cases:

1. The elimination of duplicative discovery;

2. The avoidance of conflicting rules and schedules;

3. The reduction of litigation cost; and

4. The conservation of the time and effort of the parties, attorneys, witnesses, and courts.

Manual for Complex Litigation (Fourth), § 20.131, at 219.

In this litigation, there are currently nine pending Actions in five different districts but those numbers are sure to rise rapidly.[14] Each Action involves virtually identical factual questions regarding Defendants' conduct, and overlapping issues exist concerning Plaintiffs' damages. Consolidation or coordination will eliminate the likelihood of duplicative discovery and proceedings that might result in inconsistent rulings and will prevent judicial resources from being

---

[14] Nine actions are more than enough to warrant transfer and coordination or consolidation in light of the questions at issue here. *See, e.g.,* Manual for Complex Litigation Fourth § 20.131, at * 1 ("As few as two cases may warrant multidistrict treatment …"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 228 F. Supp. 2d 1379, 1380 (J.P.M.L. 2002) (transferring and consolidating two cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues); *In re: Park West Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (transfer ordered where three actions were pending in three districts); *In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig*., 2017 WL 2391963, at *2 (J.P.M.L. June 1, 2017) (transfer ordered where twelve to fourteen actions (including tag-alongs) were pending in nine districts).

needlessly wasted. *See In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005); *see also In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (concluding that consolidation was necessary to eliminate inconsistent pretrial rulings); *In re A.H. Robins Co. "Dalkon Shield" IUD Prod. Liab. Litig.*, 406 F. Supp. 540, 542 (J.P.M.L. 1975) (concluding that transfer was necessary to prevent duplication of discovery and to eliminate the possibility of conflicting pretrial rulings).

Without transfer, coordination, and/or consolidation of the Actions and tag-along cases, litigation will needlessly entail judicial inefficiency and unnecessary expense. Further, different federal courts, in duplicating rulings on the same issues, could make contradictory findings. Litigation of this scope and importance should not be beset with such inconsistencies and inefficiencies.

### B. THE EASTERN DISTRICT OF PENNSYLVANIA IS THE APPROPRIATE FORUM FOR TRANSFER AND COORDINATION OR CONSOLIDATION.

In this nationwide case affecting millions of purchasers and users of Philips' CPAP, Bi-Level PAP, and ventilator devices, the Eastern District of Pennsylvania is an appropriate and ideal transferee district for the litigation. First, Defendant Philips RS manufactured the recalled devices and has its principal place of business in the forum State (Pittsburgh). *See National Prescription Opiate*, 290 F. Supp. 3d at 1379. In addition, the Eastern District of Pennsylvania is a geographically central and accessible forum for many of the Plaintiffs who have been affected by the recall of Philips' devices and filed Actions, including those residing in Massachusetts through Georgia. *See id*. (focusing on the Southern District of Ohio's geographic location and convenience). Philadelphia is easily accessible by Amtrak from all of those locations and as the fifth largest city in the United States, it has ample accommodations for business travelers.

Philadelphia is also serviced by Philadelphia International Airport ("PHL"), a large international airport with routes to every corner of the country and beyond. The infrastructure is certainly in place to host this MDL.

Further, the Eastern District of Pennsylvania has capable staff with a long history of successfully managing high-profile multidistrict litigation. *See, e.g., In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1998); *In re Tylenol (Acetaminophen) Mktg., Sales Practices and Prods. Liab. Litig.*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013); *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347 (J.P.M.L. 2012); *In re: Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. 2012); *Orthopedic Bone Screw*, 1997 WL 186325, at *1-2. The Eastern District of Pennsylvania's docket demonstrates that the court has the capacity to handle this litigation. As of December 31, 2020, the Eastern District of Pennsylvania had 10,123 pending cases with a median time from filing to disposition of 6 months.[15]

Within the Eastern District of Pennsylvania, United States District Judge Timothy J. Savage is an excellent jurist who can shepherd this litigation. Judge Savage is currently presiding over Movant's case. Judge Savage is an experienced jurist who was appointed to the bench by President George W. Bush in 2002. Judge Savage is a fair, demanding but reasonable, extremely organized, and efficient judge accustomed to presiding over complex and multi-plaintiff, multi-defendant cases. Judge Savage is not currently managing any MDLs on his docket, however, Judge Savage has the experience and demeanor necessary to guide this litigation in that he has

---

[15] *See* United States District Court – Judicial Caseload Profile, https://www.courts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2020.pdf (uscourts.gov), at 16 (accessed July 7, 2021).

successfully overseen two prior MDLs assigned by the Panel[16] and has experience handling complex insurance disputes. *See, e.g.*, *In re Vision Service Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("we are assigning this litigation to an experienced jurist with the ability to steer this litigation on a prudent course").

## IV. CONCLUSION

For these reasons, Movant respectfully requests that the Panel grant its motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 and transfer the Actions to the Eastern District of Pennsylvania before the Honorable Judge Timothy J. Savage.

Dated:  July 7, 2021　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ *Sandra L. Duggan*
　　　　　　　　　　　　　　　　　　Sandra L. Duggan, Esquire (PA Bar #56420)
　　　　　　　　　　　　　　　　　　Arnold Levin, Esquire (PA Bar #02280)
　　　　　　　　　　　　　　　　　　Laurence S. Berman, Esquire (PA Bar #26965)
　　　　　　　　　　　　　　　　　　Frederick S. Longer, Esquire (PA Bar #46653)
　　　　　　　　　　　　　　　　　　**LEVIN SEDRAN & BERMAN LLP**
　　　　　　　　　　　　　　　　　　510 Walnut Street, Suite 500
　　　　　　　　　　　　　　　　　　Philadelphia, PA 19106-3697
　　　　　　　　　　　　　　　　　　Telephone: (215) 592-1500
　　　　　　　　　　　　　　　　　　Facsimile: (215) 592-4663
　　　　　　　　　　　　　　　　　　Email: sduggan@lfsblaw.com
　　　　　　　　　　　　　　　　　　Email: alevin@lfsblaw.com
　　　　　　　　　　　　　　　　　　Email: lberman@lfsblaw.com
　　　　　　　　　　　　　　　　　　Email: flonger@lfsblaw.com
　　　　　　　　　　　　　　　　　　*Attorneys for Movant-Plaintiff Thomas R. Starner*

---

[16] *See In re Ace Ltd. Sec. Litig.*, 370 F. Supp. 2d 1353 (J.P.M.L. 2005); *In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1346 (J.P.M.L. 2006).