## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOM FORTNEY, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ETTA GAY FORTNEY,<br><br>PLAINTIFFS,<br><br>v.<br><br>KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS HOLDING USA, INC.; PHILIPS RS NORTH AMERICA LLC f/k/a RESPIRONICS, INC.; and PHILIPS RS NORTH AMERICA HOLDING CORPORATION,<br><br>DEFENDANTS. | **COMPLAINT**<br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiffs, Tom Fortney Individually and as Executor of the Estate of Etta Gay Fortney, by and through the undersigned counsel, hereby submits the following Complaint and Demand for Jury Trial against Defendants Koninklijke Philips N.V. ("Royal Philips"); Philips North America LLC ("Philips NA"); Philips Holding USA, Inc. ("PHUSA"); Philips RS North America LLC f/k/a Respironics, Inc. ("Philips RS"); and Philips RS North America Holding Corporation ("RS Holding") (collectively referred to as "Philips" or "Defendants") and alleges the following upon personal knowledge and belief as well as investigation of counsel:

## INTRODUCTION

1.      Philips designs, manufactures, markets, imports, sells and distributes a variety of sleep and respiratory care products.

1

2.      Philips designs, manufactures, markets, imports, sells and distributes a variety of Continuous Positive Airway Pressure ("CPAP") and BiLevel Positive Airway Pressure ("BiPAP") devices for patients with various types of sleep apnea.

3.      Philips also designs, manufactures, markets, imports, sells and distributes a variety of mechanical ventilator devices for patients with respiratory failure conditions.

4.      On June 14, 2021, Philips issued a voluntary recall notification for many of its CPAP and BiLevel PAP devices as well as a number of its mechanical ventilator devices (the "Recalled Devices").[1]

5.      In its voluntary recall notification, Philips advised of potential health risks related to the polyester-based polyurethane ("PE-PUR") sound abatement foam used in the affected devices.

6.      Philips informed patients using these affected devices of potential risks from exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material, specifically the PE-PUR.

7.      Specifically, Philips notified patients that the risks related to the issues with the sound abatement foam include headache, irritation, inflammation, respiratory issues and possible toxic and carcinogenic effects.

8.      Philips announced these hazards could result in "serious injury which can be life-threatening or cause permanent impairment."

---

[1] These include the following models: E30; DreamStation ASV; DreamStation ST, AVAPS; SystemOne ASV4; C Series ASV, S/T, AVAPs; OmniLab Advanced Plus; SystemOne (Q Series); DreamStation CPAP, Auto CPAP, BiPAP; DreamStation Go CPAP, APAP; Dorma 400, 500 CPAP; REMStar SE Auto CPAP; Trilogy 100 and 200; Garbin Plus, Aeris, LifeVent; A-Series BiPAP Hybrid A30; A-Series BiPAP V30 Auto; A-Series BiPAP A40; and A-Series BiPAP A30.

9. Philips knew about these very substantial and material risks long before they announced the voluntary recall. Patients who use the Recalled Devices have complained about black particles in their machines for years. Philips publicly warned only its shareholders and its customers about these hazards on or about April 26, 2021 and did not warn the individual users until they voluntarily recalled the Recalled Devices on June 14, 2021.

10. On July 22, 2021, The U.S. Food & Drug Administration ("FDA") identified Philips's recall as a Class 1 Recall, the most serious type of recall which includes cautioning that use of these devices may cause serious injury or death.

11. Plaintiff Etta Gay Fortney was diagnosed with obstructive sleep apnea with severe hypoxemia on or about September 29, 2010.

12. Plaintiff Etta Gay Fortney was prescribed and purchased Philips's now-recalled device, REMStar Pro, Serial Number P020429690A9B, to treat her obstructive sleep apnea on or about October 27, 2010. Plaintiff used this device as prescribed by her physician. More specifically, Plaintiff used this device on a daily basis for approximately three years.

13. Upon information and belief on or about June 18, 2013, Plaintiff Etta Gay Fortney exchanged her REMStar Pro for a ResMed, Serial Number 23111180342, which is not a Phillips' device and is not recalled. Plaintiff used this device as prescribed by her physician on a daily basis until approximately August 9, 2018.

14. On August 9 2018, Plaintiff was prescribed and purchased another Phillips' recalled device, a DreamStation, Serial Number J20793530172F, to treat her obstructive sleep apnea. Plaintiff used this device as prescribed by her physician. More specifically, Plaintiff used this device on a daily basis as directed by her physician until her death.

3

15. The REMStar Pro and DreamStation recalled devices will be referred to as the "Subject Devices."

16. On or about November 4, 2019, Plaintiff was diagnosed with lung cancer.

17. Plaintiff was found to have a superior sulcus tumor causing SVC Syndrome.

18. On November 14, 2019, Plaintiff underwent a CT-guide biopsy which confirmed squamous cell lung cancer.

19. Plaintiff, Etta Gay Fortney, died on December 7, 2019. Her immediate cause of death was lung cancer.

20. As a direct and proximate result of Philips's conduct, Plaintiff Etta Gay Fortney suffered serious and substantial life-altering injuries and pain and suffering, which ultimately resulted in her untimely death.

21. As a direct and proximate result of the Subject Devices designed, manufactured, marketed, imported, sold and distributed by Philips, Plaintiff Etta Gay Fortney suffered physical, emotional and financial injuries, including her diagnosis of lung cancer, which ultimately caused her death.

22. Plaintiff Etta Gay Fortney would not have purchased and used these products if she had known they were defective, contained toxic and carcinogenic by-products and would be subject to a recall for containing defective materials.

## PLAINTIFFS

23. Plaintiff Tom Fortney is a resident and citizen Danville, West Virginia located in Boone County.

24. Plaintiff Etta Gay Fortney was a resident and citizen of Danville, West Virginia.

25. Plaintiff Etta Gay Fortney died on December 7, 2019 as a result of lung cancer.

26.     On December 19, 2019, her husband, Plaintiff Tom Fortney, was appointed at Executor of her Estate.

27.     Plaintiff Etta Gay Fortney was prescribed the Subject Devices while a resident of Danville, West Virginia.  She purchased the Subject Devices in Danville, West Virginia and the use of the Subject Devices occurred in Danville, West Virginia.

28.     From 2010 to approximately 2013, Plaintiff Etta Gay Fortney used the REMStar Pro daily to treat her obstructive sleep apnea.

29.     At all times Plaintiff Etta Gay Fortney used the REMStar Pro in accordance with the guidelines, manual and instructions for use set forth by Defendants and as provided to her with the Subject Device.

30.     At all times Plaintiff Etta Gay Fortney used the REMStar Pro for a purpose for which the device was marketed, designed and intended.

31.     At all times Plaintiff Etta Gay Fortney used the REMStar Pro in accordance with the directions and instructions given by her prescribing physician as well as the directions and instructions given by the durable medical equipment provider of the Subject Device.

32.     Beginning approximately in August 2018 until her death, Plaintiff Etta Gay Fortney used the DreamStation daily to treat her obstructive sleep apnea.

33.     At all times Plaintiff Etta Gay Fortney used the DreamStation in accordance with the guidelines, manual and instructions for use set forth by Defendants and as provided to her with the Subject Device.

34.     At all times Plaintiff Etta Gay Fortney used the DreamStation for a purpose for which the device was marketed, designed and intended.

35.     At all times Plaintiff Etta Gay Fortney used the DreamStation in accordance with the directions and instructions given by her prescribing physician as well as the directions and instructions given by the durable medical equipment provider of the Subject Device.

36.     As a result of using the recalled Subject Devices, Plaintiff Etta Gay Fortney has suffered personal injuries including her diagnosis of lung cancer, which resulted in her untimely death. This injury would not have occurred but for the defective nature of the recalled Subject Devices and Defendants' wrongful conduct.

37.     Plaintiff Etta Gay Fortney's use of the unreasonably dangerous recalled Subject Devices were a direct and proximate cause of the development and progression of her lung cancer resulting in severe physical pain and suffering, emotional and mental distress, and her untimely death.

38.     As a result of the aforesaid conduct and recalled Subject Devices designed, manufactured, sold, distributed, marketed, advertised and promoted by Defendants, Plaintiff Etta Gay Fortney was diagnosed with lung cancer resulting in severe physical pain and suffering and emotional distress and her untimely death. As a result of such injuries, Plaintiff suffered damages for which compensatory and punitive damages should be awarded.

39.     Plaintiff Tom Fortney was deprived of the care, consideration, compassion, consortium and concern of Plaintiff, Etta Gay Fortney, and has suffered injuries and damages thereby.

**DEFENDANTS**

40.     Defendant Koninklijke Philips N.V. ("Royal Philips") is a public limited liability company established under the laws of The Netherlands, having its principal executive offices at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. Royal Philips is the parent

6

company of Philips North America LLC, Philips Holding USA, Inc., Philips RS North America

LLC f/k/a Respironics, Inc., and Philips RS North America Holding Corporation. Royal Philips

can be served with process via the *Convention on the Service Abroad of Judicial and Extrajudicial*

*Documents in Civil or Commercial Matters* ("Hague Service Convention").

41.     Defendant Philips North America LLC ("Philips NA") is a Delaware limited liability

corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge,

Massachusetts 02141. Philips NA is a wholly-owned subsidiary of Royal Philips. Upon information

and belief, Philips NA manages the operation of Royal Philips's various lines of business, including

Philips RS, in North America. The sole member of Philips NA is PHUSA, which is a Delaware

corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge,

Massachusetts 02141. Philips NA has a registered agent in Massachusetts, Corporation Service

Company, located at 84 State Street, Boston, Massachusetts 02109. Accordingly, Philips NA is a

citizen of Massachusetts and Delaware—the states where its sole member, PHUSA, Inc., is

incorporated and has its principal place of business.

42.     Defendant Philips Holding USA, Inc. ("PHUSA") is a Delaware corporation with

its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts

02141. PHUSA is a holding company that is the sole member both of Defendant Philips NA and

RS Holding. Accordingly, PHUSA is a citizen of Massachusetts and Delaware.

43.     Defendant Philips RS North America LLC f/k/a Respironics, Inc. ("Philips RS")

formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips

acquired Respironics in 2008.[2] Philips RS has a registered agent in Massachusetts, Corporation

Service Company, located at 84 State Street, Boston, Massachusetts 02109. Philips RS North

---

[2] *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE,
https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 30, 2021).

America LLC is wholly owned by a single member, Philips RS North America Holding Corporation, which is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, Massachusetts 02141. Philips RS North America is wholly owned by Philips Holding USA Inc. Accordingly, Philips RS is a citizen of Massachusetts and Delaware.

44.     Philips RS North America Holding Corporation ("RS Holding") is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Cambridge, Massachusetts 02141, and is wholly owned by PHUSA. Accordingly, Philips RS North America Holding Corporation is a citizen of Massachusetts and Delaware.

45.     Royal Philips, Philips NA, PHUSA, Philips RS and RS Holding are hereinafter collectively referred to as "Philips" or "Defendants."

## JURISDICTION AND VENUE

46.     At all times pertinent to this Complaint, Defendants were and continue to be in the business of designing, manufacturing, marketing, promoting, advertising and selling devices for the treatment of obstructive sleep apnea, including the REMStar Pro and DreamStation prescribed for, purchased and used by Plaintiff.

47.     At all times pertinent to this Complaint, Defendants were the mere alter egos or instrumentalities of each other. There is such a unity of interest and ownership between Defendants that the separate personalities of their entities ceased to exist.

48.     Upon information and belief, Defendants operated as a single enterprise, equally controlled each other's business affairs, commingled their assets and funds, disregarded corporate formalities and used each other as a corporate shield to defeat justice, perpetuate fraud and evade contractual and tort liability.

49.     At all times pertinent to this Complaint, Defendants acted in all respects as agents or apparent agents of one another.

50.     At all times pertinent to this Complaint, Defendants acted in concert in the designing, manufacturing, marketing, promoting, advertising and selling of devices for the treatment of obstructive sleep apnea, including the Subject Devices.

51.     Defendants combined their property and labor in a joint undertaking for profit, with rights of mutual control over each other, rendering them jointly liable to Plaintiff.

52.     Defendants regularly transact business in Massachusetts that includes marketing and selling devices for the treatment of obstructive sleep apnea, derive substantial revenue from their business transactions in Massachusetts, and have purposely availed themselves of the privilege of doing business in Massachusetts.

53.     Defendants shipped or participated in shipping the Subject Devices and other devices with the reasonable expectation that the devices could or would be purchased and used in the State of West Virginia through the stream of commerce.

54.     Plaintiff is a citizen of the state of West Virginia.

55.     Defendants Philips NA, PHUSA, Philips RS, and RS Holding are each citizens of the states of Massachusetts and Delaware.

56.     Defendant Royal Philips is a citizen of The Netherlands and Royal Philips regularly transacts business in Massachusetts and therefore receives profits through business transactions in the State of Massachusetts.

57.     Defendant, Koninklijke Philips N.V. is the parent company of Defendant Philips North America LLC, its largest subsidiary in the United States and it is also the parent company of Defendant, Philips RS North America LLC.   Upon information and belief, Defendant,

Koninklijke Philips N.V., exercises control over Philips North America LLC with regard to the day-to-day operations of the subsidiary and the conduct underlying this dispute.

58.    Upon information and belief, Defendants, Koninklijke Philips N.V. and Philips North America LLC, have overlapping leadership and personnel on the Executive Committee, Board of Management and Supervisory Board.

59.    Upon information and belief, the Executive Committee of Defendant, Koninklijke Philips N.V., operates under the chairmanship of the Chief Executive Officer and Supports the Board of Management in the deployment of Philips's strategy and policies, and the achievement of its objectives and results.[3]

60.    Upon information and belief, The Supervisory Board of Defendant, Koninklijke Philips N.V., operates as a separate and independent body and supervises the policies of the executive management and the general course of affairs of Philips and advises the executive management.[4]

61.    Plaintiff alleges damages that exceed $75,000, exclusive of interest and costs.

62.    Thus, This Court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a)(1)–(2), as there is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

63.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Philips NA, PHUSA, Philips RS, and RS Holding each has their principal place of business in this District and are thus residents of this District.

---

[3] https://www.philips.com/a-w/about.html
[4] https://www.philips.com/a-w/about.html

64.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as all Defendants, including Royal Philips, designed, manufactured, marketed, promoted, advertised, sold and profited from the Recalled Devices in Massachusetts.

65.     Further, Defendant Royal Philips is not a resident of the United States, and thus venue is proper in this District under 28 U.S.C. § 1391(b)(3), as it may be sued in any judicial district.

66.     This Court's exercise of personal jurisdiction over Defendants comports with due process.

## I.     BACKGROUND

67.     At all relevant times, Defendants designed, manufactured, marketed, sold, distributed profited from a lineup of CPAP and BiPAP devices as well as mechanical ventilator devices under its "Sleep & Respiratory Care" portfolio. These devices are designed to assist individuals with a number of sleep, breathing and other respiratory conditions, including obstructive sleep apnea.

68.     Instead of adequately testing and assuring the safety of the Recalled Devices, Defendants sought and obtained FDA approval to market the Recalled Devices, including the Subject Devices used by Plaintiff, under Section 510(k) of the Medical Device Amendment to the Food, Drug and Cosmetics Act.  Section 510(k) allows marketing of a medical device if the device is deemed substantially equivalent to other legally marketed predicate devices marketed prior to May 28, 1976 and no formal review for safety or efficacy is required.

### A.    Continuous Positive Airway Pressure Therapy

69.    Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device which helps an individual breathe by increasing the air pressure in an individual's throat.

70.    Sleep apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance and long-term health.

71.    CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

### B.    Bi-Level Positive Airway Pressure Therapy

72.    Bi-Level Positive Airway Pressure therapy is a common alternative to CPAP therapy for treating sleep apnea. Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable because BiPAP devices deliver two alternating levels—inspiratory and expiratory—of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device. The inspiratory positive airway pressure assists a

person as a breath is taken in. Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurized air (the inspiratory positive level) to assist as a person inhales and another level (the expiratory level) as a person exhales.

### C.     Philips's Sleep & Respiratory Care Devices Were Endangering its Users

73.     On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time to its shareholders, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[5]

74.     Philips has utilized PE-PUR sound abatement foam to dampen device vibration and sound during routine operation.

75.     On June 14, 2021, as a result of ongoing review following the announcement on April 26, 2021, Philips issued a voluntary recall notification for affected devices.[6]

76.     In its recall notification, Philips identified examples of potential risks that included exposure to degraded sound abatement foam particles and exposure to chemical emissions from the sound abatement foam material.[7]

---

[5] *First Quarter Results*, PHILIPS (Apr. 26, 2021),
//https: www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf
(accessed June 30, 2021).
[6] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021),
https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 30, 2021).
[7] *Philips issues recall notification*, PHILIPS RESPIRONICS (June 14, 2021),
https://www.usa.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-

77.     Philips reported that, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as well as possibly serious injury which can be life-threatening, cause permanent impairment or require medical intervention to prevent permanent impairment.[8]

78.     According to Philips's recall notice, the PE-PUR foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following health harms: "*Particulate exposure* can cause headache, irritation [skin, eye, and respiratory tract], inflammation, respiratory issues, and possible toxic and carcinogenic effects[;]" whereas the "potential risks of *chemical exposure due to off-gassing* include headache, irritation, hypersensitivity, nausea/vomiting, and possible toxic and *carcinogenic* effects."[9]

### D.     Philips's Recall and New Product Launch

79.     Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall in total.[10]

80.     According to FDA Form 483 which was issued to Philips Respironics, Inc. (with dates of inspection of August 26, 2021 through November 9, 2021) the recall targets "…over 15 million Philips Respironics ventilator, CPAP, and BiPAP devices, due to polyester polyurethane

---

philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 30, 2021) (emphasis added).

[8] *Id.*

[9] *Philips issues recall notification*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 30, 2021) (emphasis added).

[10] Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 29, 2021).

foam degradation and volatile organic compound emission, which was publicly announced on 06/14/2021."[11]

81.     Philips designs, manufactures and sells CPAP machines, BiPAP machines and mechanical ventilators, among other products. According to Philips's 2020 Annual Report, Sleep & Respiratory Care constituted approximately 49% of Philips's total sales in its Connected Care line of business, which in turn accounted for 28% of Philips's overall sales of about €19.535 billion.

82.     Philips's flagship CPAP/BiPAP machine family is known as the "DreamStation" family line, which includes the original DreamStation launched in October 2015, and the DreamStation Go (a travel version).  Philips sells DreamStation products through its subsidiary Respironics that Philips acquired in 2008.

83.     Philips's recalled CPAP and BiPAP machines contain PE-PUR foam for sound abatement and air is required to pass through this foam before it is pumped into the patient's airway.

84.     On or about April 13, 2021, Philips announced that it was launching the DreamStation 2, the next-generation machine in its DreamStation product family.  Interestingly, the DreamStation 2 does not contain the PE-PUR foam for sound abatement.

85.     Less than two weeks later, on April 26, 2021, Philips announced in its Q1 2021 Quarterly Report:

> Philips has determined from user reports and testing that there are possible risks to users related to the sound abatement foam used in certain of Philips' sleep and respiratory care devices currently in use. The risks include that the foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone*), and certain environmental conditions involving high humidity and temperature. The

---

[11] Department of Health and Human Services Food and Drug Administration FDA Form 483 https://www.fda.gov/media/154099/download?utm_medium=email&utm_source=govdelivery

majority of the affected devices are in the first-generation DreamStation product family. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected. Philips is in the process of engaging with the relevant regulatory agencies regarding this matter and initiating appropriate actions to mitigate these possible risks. Given the estimated scope of the intended precautionary actions on the installed base, Philips has taken a provision of EUR 250 million.

[*]Potential Risks Associated With The Use of Ozone and Ultraviolet (UV) Light Products for Cleaning CPAP Machines and Accessories: FDA Safety Communication.]

86.     On June 14, 2021, Philips issued a voluntary recall for many of its CPAP and Bi-Level devices as well as a number of its ventilator devices.

87.     Philips issued the following advice to patients using any of the Recalled Devices:

- "For patients using BiLevel PAP and CPAP devices: Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[12]

- "For patients using life-sustaining mechanical ventilator devices: DO NOT discontinue or alter prescribed therapy, without consulting physicians to determine appropriate next steps."[13]

88.     Upon information and belief, Philips timed its recall to coincide with the launch of its next generation CPAP platform, DreamStation 2, which purportedly does not suffer from the same PE-PUR foam issues.

89.     On the same day, Philips provided additional information in an announcement entitled "Clinical information for physicians," which explained that the foam breakdown "may lead to patient harm and impact clinical care." Philips wrote:

While there have been limited reports of headache, upper airway irritation, cough, chest pressure and sinus infection that may have been associated with the foam, based on lab testing and evaluations, it may be possible that these potential health risks could result in a wide range of potential patient impact, from transient potential injuries, symptoms and complications, as

---

[12] *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 30, 2021).
[13] *Id.*

well as possibly serious injury which can be life-threatening or cause permanent impairment, or require medical intervention to preclude permanent impairment.

90.     The announcement by Philips detailed two types of hazards from the PE-PUR foam in the devices:  (1) dangers due to foam degradation exposure and (2) possible exposure to chemical emissions from the breaking down of the PE-PUR foam.  The first hazard is:

> **Potential Hazard:** Philips has determined from user reports and lab testing that under certain circumstances the foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user of its Continuous Positive Airway Pressure (CPAP), BiLevel Positive Airway Pressure (BiLevel PAP) and Mechanical Ventilator devices. The foam degradation may be exacerbated by environmental conditions of higher temperatures and humidity in certain regions. Unauthorized cleaning methods such as ozone may accelerate potential degradation.
>
> The absence of visible particles does not mean that foam breakdown has not already begun. Lab analysis of the degraded foam reveals the presence of potentially harmful chemicals including:
>
> - Toluene Diamine
> - Toluene Diisocyanate
> - Diethylene glycol.[14]

91.     The European Union considers Toluene Diisocyanate "highly toxic" and has concluded that Toluene Diamine "cannot be considered safe for use" even as a hair dye.

92.     Philips disclosed that it "has received several complaints regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."

93.     In fact, FDA Form 483 which was issued to Philips Respironics, Inc. (with dates of inspection of August 26, 2021 through November 9, 2021) reflects that "No formal

---

[14] *Sleep and Respiratory Care update, Clinical information for physicians*, PHILIPS (June 14, 2021), https://www.philips.com/c-dam/b2bhc/master/landing-pages/src/update/documents/philips-recall-clinical-information-for-physicians-and-providers.pdf?_ga=2.43039205.1759564883.1625006706212130326.1624473291&_gl=1*2nhu1w*_ga*MjEyMTM wMzI2LjE2MjQ0NzMyOTE.*_ga_2NMXNNS6LE*MTYyNTE1MTQ3MC4xNi4xLjE2MjUxxN TE1OTUuMTg. (accessed June 30, 2021).

investigation, risk analysis, or CAPA were initiated, performed, or documented, in response to

the at least 222,000 complaints that could potentially be related to foam degradation and received

from 2008 to 2017, prior to the initiation of CPAP INV 0988 in 2018."[15]

94.     The second hazard is the possibility of VOCs, that is, chemical emissions from

the PE-PUR foam. Philips explained:

> **Potential Hazard:** Lab testing performed for and by Philips has also
> identified the presence of VOCs which may be emitted from the sound
> abatement foam component of affected device(s). VOCs are emitted as
> gases from the foam included in the CPAP, BiLevel PAP and MV devices
> and may have short- and long term adverse health effects.
>
> Standard testing identified two compounds of concern (COC) may be
> emitted from the foam that are outside of safety thresholds. The compounds
> identified are the following:
>
> - Dimethyl Diazine
> - Phenol, 2,6-bis (1,1-dimethylethyl)-4-(1-methylpropyl)-[16]

95.     Philips admitted that the risks of these VOCs include that they "may cause

irritation and airway inflammation, and this may be particularly important for patients with

underlying lung diseases or reduced cardiopulmonary reserve" and may lead to the following

symptoms: "headache/dizziness, irritation (eyes, nose, respiratory tract, skin), hypersensitivity,

nausea/vomiting, toxic and carcinogenic effects," as well as "adverse effects to other organs

such as kidney and liver."

---

[15] Department of Health and Human Services Food and Drug Administration FDA Form  483
https://www.fda.gov/media/154099/download?utm_medium=email&utm_source=govdelivery
[16] *Id.*

### E. PHILIPS'S PLAN TO PROVIDE SAFE REPLACEMENT DEVICES TO USERS IS INEFFICIENT

96.     Philips's so-called "recall" does not actually provide patients with new CPAP, BiPAP or mechanical ventilator devices, but again suggests consumers can buy the next generation of its product. As Philips's June 14, 2021 announcement makes clear:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to the launch and implementation of the projected correction. The company will replace the current sound abatement foam with a new material and has already begun the preparations, which include obtaining the relevant regulatory clearances. Philips aims to address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be modified with a different sound abatement foam and shipped upon receipt of the required regulatory clearances. Philips' recently launched next-generation CPAP platform, DreamStation 2, is not affected by the issue. To support the program, Philips is increasing the production of its DreamStation 2 CPAP devices, that are available in the US and selected countries in Europe.

97.     It may take a year or more to provide replacement devices.

98.     At the same time, Philips intends to profit from the so-called recall by selling more of its next generation product, the DreamStation 2.  Philips intentionally timed the recall to coincide with the launch of the DreamStation 2.

99.     Due to the design of the Recalled Devices, it is prohibitively difficult for patients to remove or replace the PE-PUR foam themselves.

100.     There is also a general shortage of available replacement machines thereby endangering those with sleep apnea who do not have access to a safe device.

101.    Patients need to use their machines every day or else their symptoms, including various forms of sleep apnea—which can be severe and life-threatening—may cause further injury.

102.    As a result, the recall by Philips leaves patients without safe, free options. Patients may buy Philips's next-generation product or a competitor's product—at full price.

103.    Pursuant to the statements issued by Philips that are set forth above, Philips has admitted that the Recalled Devices are defective and unsafe. The Recalled Devices are effectively worthless and have a far lesser value than what customers paid and would not have been purchased by patients if they were informed of the defect at the time of sale.

## II.    EQUITABLE TOLLING OF STATUTES OF LIMITATIONS

104.    The running of any statute of limitations has been equitably tolled by reason of Defendants' fraudulent concealment and/or omissions of critical safety information. Through its affirmative misrepresentations and omissions, Philips actively concealed from Plaintiff, her physicians and durable medical equipment provider the true risks associated with the Recalled Devices.

105.    As a result of Defendants' actions, Plaintiffs were unaware and could not have reasonably known or learned through reasonable diligence that she had been exposed to the risks and harms set forth and that those risks and harms were the direct and proximate result of Defendants' acts and omissions.

## CAUSES OF ACTION

## COUNT I - STRICT PRODUCTS LIABILITY–DESIGN DEFECT

106.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

107.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

108.    At all times herein mentioned, Defendants were involved in researching, designing, developing, manufacturing, testing, selling and/or distributing the Recalled Devices, including the Subject Devices, which are defective and unreasonably dangerous.

109.    The Subject Devices were defective in their design or formulation in that they were not reasonably fit, suitable or safe for their intended purpose and their foreseeable risks exceeded the benefits associated with their designs. The Subject Devices are defective in design because they cause headaches, irritation of the skin, eye and respiratory tract, inflammatory respiratory issues, asthma, adverse effect to organs (including the kidneys and liver), hypersensitivity, nausea, vomiting and toxic and carcinogenic effects.

110.    The Subject Devices are more dangerous than other available devices indicated for similar conditions and uses, and the utility of the devices does not outweigh their risks.

111.    The defective condition of the Subject Devices rendered them unreasonably dangerous and not reasonably safe, and the devices were in this defective condition at the time they left the hands of Defendants.  The subject devices were expected to and did reach Plaintiff Etta Gay Fortney, the supplier of her devices and/or her physician without substantial change in the condition in which they were designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

112.     The Subject Devices were used for their intended purposes by Plaintiff Etta Gay Fortney and the Subject Devices were not materially altered or modified prior to their use.

113.     The Subject Devices are defective in design because the PE-PUR foam comprising part of the devices can degrade into particles that enter the devices' air pathway and can off-gas certain toxic and harmful chemicals. These defects caused, among other problems, Plaintiff's lung cancer and untimely death.

114.     At or before the time the Subject Devices were released into the market and/or sold to Plaintiff Etta Gay Fortney, Defendants could have designed the products to make them less prone to causing health harms, a technically feasible, safer alternative design that would have prevented the harm Plaintiff suffered without substantially impairing the function of the subject devices, including not using any PE-PUR foam.  In fact, Defendants have purportedly designed such a product with the DreamStation 2.

115.     Safer, alternative machines from other manufacturers were available that did not suffer from the defect and did not have an unreasonable risk of harm as with the recalled devices, as well as the Subject Devices, and their unsafe PE-PUR foam.

116.     The Subject Devices did not perform as an ordinary consumer would expect.

117.     Plaintiff Etta Gay Fortney was neither able to discover, nor could she have discovered through the exercise of reasonable diligence, the defective nature of the Subject Devices.   Further, in no way could Plaintiff have known that Defendants had designed, developed and manufactured the Subject Devices in a way as to make the risk of harm or injury outweigh any benefits.

118.     The Subject Devices were being used in a way in which the Defendants intended at the time they were prescribed and sold to Plaintiff Etta Gay Fortney.

119.     Defendants had a duty to create a device that was not unreasonably dangerous for its normal, intended use.  Defendants breached this duty.

120.     Defendants knew or should have known that the recalled devices, including the Subject Devices, would be prescribed to patients and that physicians and patients were relying on them to furnish a safe and suitable device.  Further, Defendants knew or should have known that patients for whom the Recalled Devices would be used, such as Plaintiff Etta Gay Fortney, could be and would be affected by the defective design and composition of the devices.

121.     Defendants researched, designed, manufactured, tested, advertised, promoted, marketed, sold and distributed defective devices which, when used in their intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers, such as Plaintiff Etta Gay Fortney, and Defendants are therefore strictly liable for the injuries sustained by Plaintiffs.

122.     As a direct and proximate result of Defendants' placement of the Subject Devices into the stream of commerce and Plaintiff Etta Gay Fortney's use of the product as designed, manufactured, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff was diagnosed with lung cancer and suffered serious physical, emotional and mental injury, harm, damages, economic loss, and untimely death.

## COUNT II - STRICT PRODUCTS LIABILITY–FAILURE TO WARN

123.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

124.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the

23

Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

125.     At all times herein mentioned, Defendants designed, developed, researched, tested and knew or should have known about significant health risks with the Subject Devices.

126.     At all times herein mentioned, Defendants advertised, promoted, marketed, sold and distributed the Subject Devices that were used by Plaintiff Etta Gay Fortney.

127.     The Subject Devices were expected to and did reach the usual consumers, handlers and persons coming into contact with said devices, without substantial change in the condition in which they were produced, manufactured, sold, distributed and marketed by the Defendants.

128.     Defendants each had an independent duty and continuing duty to warn the medical community, Plaintiff Etta Gay Fortney, and Plaintiff's physicians about the significance health risks and other health harms with the Subject Devices.

129.     Defendants failed to provide adequate warnings regarding the risks of the PE-PUR foam, and failed to use reasonable care to provide such warnings when Defendants knew of these risks.

130.     Defendants had information regarding the true risks but failed to warn the medical community, Plaintiff Etta Gay Fortney and Plaintiff's physicians.  Defendants had such knowledge for years prior to issuing the recall.

131.     Despite Defendants' obligation to warn of the significant health risks, Defendants instead chose to actively conceal this knowledge.

132.    Plaintiff Etta Gay Fortney would not have purchased, chosen and/or paid for all or part of the Subject Devices if she knew of the defects and the health risks of the products.

133.    Plaintiff Etta Gay Fortney would not have used the Subject Devices if she knew of the defects and the health risks of the products.

134.    Plaintiff Etta Gay Fortney used the Subject Devices in a manner intended and foreseeable by Defendants.

135.    The Subject Devices were defective due to inadequate warnings because Defendants knew or should have known that the products created a significantly increased risk of toxic and carcinogenic effects and more specifically, lung cancer, among other health impacts and failed to warn the medical community, Plaintiff Etta Gay Fortney, and Plaintiff's physician of the nature of such risks.

136.    Defendants omitted and downplayed the significant health risks with the Subject Devices that Defendants knew or should have known from previous testing and research even prior to the Subject Devices' FDA approval.

137.    The Subject Devices' labeling and warnings were defective because they omitted and inadequately warned of the devices' health risks.

138.    Although physicians are supposed to weigh the risks and benefits before prescribing a medical device, Defendants knew that their deliberate omissions would cause physicians, including Plaintiff Etta Gay Fortney's physician, to prescribe the Subject Devices without being able to adequately weigh the health risk associated with using the devices.

139.    If Defendants would have properly warned about the Subject Devices' significant health risk and/or other health harms, no reasonable physician, including Plaintiff Etta Gay Fortney's physician, would have recommended or prescribed the Subject Devices because the

potential benefits were significantly outweighed by the significant health risk and/or other harms.

140.    Had Defendants reasonably provided adequate warnings described herein, such warnings would have been heeded and no healthcare professional, including Plaintiff Etta Gay Fortney's physician, would have prescribed the Subject Devices and no consumer, including Plaintiff, would have purchased and/or used the Subject Devices.

141.    As a direct and proximate result of Defendants' placement of the Subject Devices into the stream of commerce and Plaintiff Etta Gay Fortney's use of the product as designed, manufactured, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff was diagnosed with lung cancer and suffered serious physical, emotional and mental injury, harm, damages, economic loss, including her untimely death.

## COUNT III - STRICT LIABILITY–MANUFACTURING DEFECT

142.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

143.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

144.    At all times herein mentioned, Defendants were involved in researching, designing, developing, manufacturing, testing, selling and/or distributing the Recalled Devices, including the Subject Devices, which are defective and unreasonably dangerous.

145.    The Subject Devices were expected to and did reach Plaintiff Etta Gay Fortney without a substantial change in its condition.

146.    The finished Subject Devices deviated, in terms of construction and quality, from the specifications or planned output in a manner that made them unreasonably dangerous.

147.    At all relevant times, the Recalled Devices, including the Subject Devices, were defectively and improperly manufactured and designed by Defendants in that Defendants continued to supply consumers with the Recalled Devices despite having full knowledge that the devices posed substantial and avoidable bodily injury, including but not limited to toxic and carcinogenic effects and more specifically, lung cancer.

148.    The foreseeable risks of the Subject Devices were known and could have been avoided.

149.    At all relevant times, the Subject Devices were defectively manufactured by Defendants in that its design and formulation is more dangerous than what an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

150.    At all relevant times, Defendants actively deceived users that their use of the Recalled Devices posed safety risks that far outweighed any benefits.

151.    Furthermore, the Recalled Devices, including the Subject Devices, were defectively manufactured in that the PE-PUR foam comprising part of the devices can degrade into particles that enter the devices' air pathway and can off-gas certain toxic and harmful chemicals. These defective Subject Devices cause, among other injuries, toxic and carcinogenic effects, and more specifically, lung cancer.

152.    Plaintiff Etta Gay Fortney and other similarly situated consumers were unknowingly subjected to receiving different doses of toxins, carcinogens and other deleterious components and contaminants when using the Recalled Devices including the Subject Devices.

153.    As a direct and proximate result of Defendants' placement of the Subject Devices into the stream of commerce and Plaintiff Etta Gay Fortney's use of the product as designed, manufactured, sold, supplied and introduced into the stream of commerce by Defendants, Plaintiff was diagnosed with lung cancer and suffered serious physical, emotional and mental injury, harm, damages, economic loss, and untimely death.

## COUNT IV - NEGLIGENT DESIGN DEFECT

154.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

155.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

156.    At all relevant times, Defendants manufactured, designed, marketed, tested, promoted, supplied, sold and/or distributed the Recalled Devices, including the Subject Devices, in the regular course of business that was used by Plaintiff Etta Gay Fortney.

157.    The Subject Devices were designed and intended to be used as for the treatment of sleep apnea and other health issues.

158. Defendants knew or by the exercise of reasonable care, should have known, the use of the Subject Devices was dangerous, harmful and injurious when used by Plaintiff Etta Gay Fortney and consumers in a reasonably foreseeable manner.

159. Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of the Subject Devices.

160. Defendants breached their duty by failing to use reasonable care in the design of the Subject Devices by designing the device such that PE-PUR foam inside the device could produce highly harmful particles and gasses that enter the device's airway leading to Plaintiff Etta Gay Fortney's respiratory system.

161. The design of the Recalled Devices and the PE-PUR foam rendered the Recalled Devices not reasonably fit, suitable, or safe for their intended purpose.

162. The dangers of the Recalled Devices outweighed the benefits and rendered the products unreasonably dangerous. Indeed, there are CPAP and other machines that do not use a similarly toxic foam that is subject to degradation, inhalation, ingestion and off-gassing.

163. Safer, alternative machines from other manufacturers were available that did not have an unreasonable risk of harm as with the Recalled Devices and their unsafe foam.

164. The risk-benefit profile of the Recalled Devices was unreasonable, and the products should have had stronger and clearer warnings or should not have been sold in the market.

165. The Recalled Devices did not perform as an ordinary consumer would expect.

166.    The Subject Devices contained and produced chemicals and particles which can lead to headaches, irritation of the skin, eye, and respiratory tract, inflammation respiratory issues, asthma, adverse effect to organs (including the kidneys and liver), hypersensitivity, nausea, vomiting, toxic effects and carcinogenic effects, all of which Defendants knew, or by the exercise of reasonable care, should have known, that ordinary consumers such as Plaintiff would be victim to.

167.    Defendants breached their duty when they failed to use commercially-feasible alternative designs to minimize these harms, including but not limited to designing products that prevented exposure to particles and off-gasses from PE-PUR foam, using a noise and vibration reducing foam that did not possess these harmful qualities, using alternative methods of noise vibration reduction, preventing foam particles and gasses from entering the airway of the product users, among many other potential designs.

168.    Defendants breached their duty by failing to use reasonable care by declining to include an expiration or best if "used by" date, which left open the potential for the devices' chemical and other properties to change in an even more harmful manner.

169.    As a direct and proximate result of Defendants' negligent design, Plaintiff Etta Gay Fortney was diagnosed with lung cancer resulting in her untimely death for which her estate is entitled to recover, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### COUNT V - NEGLIGENT FAILURE TO WARN

170.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

171.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

172.     At all relevant times, Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the Recalled Devices, including the Subject Devices that Plaintiff Etta Gay Fortney used.

173.     The Defendants knew or, by the exercise of reasonable care, should have known, use of the Subject Devices was dangerous, harmful, and injurious when used by Plaintiff Etta Gay Fortney in a reasonably foreseeable manner.

174.     The Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff Etta Gay Fortney would not have realized the potential risks and dangers of the Subject Devices.

175.     The Defendants knew or, by the exercise of reasonable care, should have known, that the Recalled Devices posed risks including headaches, irritation of the skin, eye, and respiratory tract, inflammation respiratory issues, asthma, adverse effect to organs (including the kidneys and liver), hypersensitivity, nausea, vomiting, and toxic effects and carcinogenic effects, among other harmful effects, as described herein, that were known and knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, and distribution of the Recalled Devices.

176. The Defendants owed a duty to all reasonably foreseeable users to disclose the risks associated with the use of the Recalled Devices.

177. The Defendants breached their duty of care by failing to use reasonable care in providing adequate warnings to Plaintiff, the supplier of her device, the medical community and Plaintiff Etta Gay Fortney's physicians, in the Subject Devices' labeling and packaging, and through marketing, promoting and advertising of the Subject Devices.

178. At all relevant times, Defendants could have provided adequate warnings and instructions to prevent the harms and injuries set forth herein, such as providing full and accurate information about the Recalled Devices to Plaintiff Etta Gay Fortney, the supplier of her devices, the medical community and Plaintiff's physicians, in advertising, at point of sale, on the devices' instructions and inserts, and on the devices' labels.

179. A reasonable company under the same or similar circumstances would have warned and instructed of the dangers.

180. Plaintiff Etta Gay Fortney was injured as a direct and proximate result of Defendants' failure to warn because she would not have purchased and used the Subject Devices had she received adequate warnings and instructions that she could be exposed to toxic and carcinogenic particles and gasses that cause headaches, irritation of the skin, eye, and respiratory tract, inflammation respiratory issues, asthma, adverse effect to organs (including the kidneys and liver), hypersensitivity, nausea, vomiting, toxic effects, and carcinogenic effects.

181. Defendants' lack of adequate and sufficient warnings and instructions and its inadequate and misleading advertising, labeling, and instructions to physicians and the suppliers of the Recalled Devices was a substantial contributing factor in causing the harm to Plaintiff and her untimely death.

## COUNT VI - NEGLIGENT MANUFACTURING

182. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

183. Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

184. At all relevant times, the Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, and/or sold the Recalled Devices, including the Subject Devices that Plaintiff Etta Gay Fortney used.

185. The Defendants had a duty to use exercise reasonable care in the manufacturing, assembling, inspecting and packaging of the Subject Devices.

186. The Defendants knew or, by the exercise of reasonable care, should have known, use of the Subject Devices carelessly manufactured, assembled, inspected, and packaged was dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

187. The Defendants knew or, by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would not have realized the potential risks and dangers of the Subject Devices improperly manufactured assembled, inspected, and packaged.

188. Without limitation, the Defendants breached their duty to exercise reasonable care in manufacturing, assembling, inspecting, and packaging the Recalled Devices by their:

33

- Failure to follow Good Manufacturing Practices ("GMPs");

- Failure to adequately inspect/test the Recalled Devices during the manufacturing process;

- Failure to adequately determine/test the integrity of PE-PUR foam and its qualities, especially after the devices have aged; and

- Failure to adequately determine/test the purity of airflow through the Recalled Devices' airway, especially after the devices have aged.

189. A reasonable manufacturer under the same or similar circumstances would have implemented appropriate manufacturing procedures to better ensure the quality of their devices.

190. Plaintiff Etta Gay Fortney was injured and died as a direct and proximate result of Defendants' failure to use reasonable care in the manufacturing, assembling, inspecting, and packaging of the Subject Device as described herein.

191. The Defendants' negligent manufacturing, assembling, inspecting, and packaging of the Subject Devices was a substantial factor in causing Plaintiff Etta Gay Fortney's injuries and wrongful death.

## COUNT VII - NEGLIGENCE/GROSS NEGLIGENCE

192. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

193. Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to

34

exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

194. Defendants had a duty to exercise reasonable care in designing, developing, researching, testing, manufacturing, marketing, supplying, promoting, selling, and distribution of the Recalled Devices, including the Subject Devices.

195. Defendants knew or should have known that using the Subject Devices created a significantly increased risk of lung cancer, among other health harms.

196. The negligence of the Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions.

197. Defendants designed and developed the Recalled Devices without thoroughly or adequately testing the devices;

198. Defendants sold the Recalled Devices without making proper and sufficient tests to determine the dangers to the users;

199. Defendants failed to adequately and correctly warn Plaintiff Etta Gay Fortney, the public, and the medical community, of the risks associated with the Recalled Devices;

200. Defendants advertised and recommended the use of the Recalled Devices for treatment of sleep apnea and other conditions without sufficient knowledge as to the significant risks;

201. Defendants failed to exercise reasonable care in designing the Recalled Devices in a manner which was dangerous to the users;

202. Defendants negligently manufactured the Recalled Devices in a manner which was dangerous to the users;

203.    Defendants failed to exercise reasonable care when they collectively decided to conceal information concerning the risks.

204.    Additionally, Defendants under-reported, underestimated, and downplayed the serious dangers of the Recalled Devices' association with health harms.

205.    Defendants negligently compared the safety risk and/or dangers of the Subject Devices with other forms of treatment for sleep apnea and similar conditions.

206.    Defendants also failed to warn Plaintiff Etta Gay Fortney, prior to actively encouraging the sale of the Subject Devices, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early detection of lung cancer.

207.    Defendants specifically failed to exercise reasonable care when they failed to accompany the Subject Devices with proper and/or accurate warnings regarding *all* adverse side effects associated with the use of the Subject Devices.

208.    Once Defendants gained additional information about the Recalled Devices' association with carcinogenic effects, including but not limited to lung cancer, it failed to update its warnings and thereafter accompany the Recalled Devices with adequate warnings.

209.    Despite the fact that Defendants knew or should have known that the Recalled Devices caused unreasonably dangerous side effects, they made conscious decisions to downplay these risks and continue to market, manufacture, distribute, and/or sell the devices to physicians and patients, including Plaintiff Etta Gay Fortney.

210.    Defendants knew or should have known that consumers, such as Plaintiff, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

211.    Defendants' negligence was the proximate cause of Plaintiff Etta Gay Fortney's injuries, including her lung cancer that caused her untimely death.

212.    As a result of the foregoing acts and omissions, Plaintiff Etta Gay Fortney was caused to suffer serious and dangerous side effects that led to lung cancer, as well as other severe and personal injuries, physical pain and mental anguish, including diminished enjoyment of life, and her untimely death.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

213.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

214.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

215.    Defendants had a duty to exercise reasonable care to those whom they provided device information about the Recalled Devices and to all those relying on the information provided, including Plaintiff Etta Gay Fortney, her healthcare providers, and the public in general that the devices had been tested and found to be safe and effective for treating sleep apnea.

216.    Defendants, in the course of selling the Recalled Devices, supplied information about the devices through television commercials, advertisements, marketing campaigns, sales representatives, labeling, and warnings.

217.    Defendants breached their duty by misrepresenting the Recalled Devices' safety to the medical and healthcare community, to Plaintiff Etta Gay Fortney, and the public in general.

218.    However, Defendants failed to exercise reasonable care because their goal should have been to put safety before their profits by providing individuals with the realistic risks and expectations that the Recalled Devices could cause serious injuries.

219.    Defendants' representations were made without properly conducting sufficient testing and by providing insufficient warnings about the Recalled Devices' potential risks.

220.    Defendants' false representations that the Recalled Devices were safe for consumers and their failure to disclose material past and existing facts of the Recalled Devices' health risks were made or omitted with the intent to induce Plaintiff to rely upon those facts or omissions.

221.    Plaintiffs were unaware and did not know that the Subject Devices were unsafe for the purpose of treating sleep apnea because it caused a significant risk of harm until *after* Plaintiff Etta Gay Fortney had been exposed to toxic and carcinogenic particles and gasses.

222.    Plaintiff Etta Gay Fortney justifiably relied upon the false representations of Defendants.

223.    Had Defendants reasonably and proposed provided adequate warnings of serious injuries, such warnings would have been heeded and no healthcare professional, including Plaintiff Etta Gay Fortney's physician, would have prescribed the Subject Devices and no consumer, including Plaintiff, would have purchased and/or used the Subject Devices.

224.    As a direct and proximate result of the foregoing acts and omissions, Plaintiff Etta Gay Fortney was caused to suffer serious injuries, physical pain and mental anguish, including diminished enjoyment of life, and her untimely death.

## COUNT IX - FRAUD

225.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

226.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

227.    At all relevant times, Defendants designed manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to consumers, such as Plaintiff Etta Gay Fortney.

228.    Defendants knowingly made fraudulent statements regarding the safety of the Recalled Devices and the substantial health risks associated with using the devices, all the while intending to deceive Plaintiff Etta Gay Fortney and the general public.

229.    At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury. Due to these and other features, the Recalled Devices are not fit for their ordinary, intended use as treatment devices for sleep apnea and similar respiratory conditions.

230.    Defendants touted the Recalled Devices as safe, despite a failure to adequately research or test the devices to assess their safety prior to marketing and promoting their use.

231. Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

232. Defendants' fraudulent misrepresentations and omissions were material facts that were essential to Plaintiff Etta Gay Fortney's decision to purchase the Subject Devices.

233. Plaintiff Etta Gay Fortney was unaware that Defendants were knowingly concealing these material facts, which Plaintiff relied on to her detriment.

234. By knowingly misrepresenting this material information, Defendants breached their duty to protect Plaintiff Etta Gay Fortney and consumers.

235. Plaintiff Etta Gay Fortney justifiably relied to her detriment on Defendants' fraudulent statements. Had Plaintiff been adequately informed of the material facts concealed from her regarding the safety of the Subject Devices, and not intentionally deceived by Defendants, she would not have acquired/purchased or used the Subject Devices.

236. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff Etta Gay Fortney suffered from lung cancer and her untimely death for which her estate is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

## COUNT X - FRAUDULENT CONCEALMENT

237. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

238. Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the

Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

239. At all relevant times, Defendants designed, manufactured, assembled, inspected, tested, packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used the devices, such as Plaintiff.

240. Defendants had a duty to disclose material facts about the Recalled Devices that would substantially affect Plaintiff's and the general public's use when purchasing the devices.

241. At all reasonable times, Defendants fraudulently misrepresented the Recalled Devices as safe, when in fact the devices posed unreasonable risks of substantial bodily injury. Therefore, the devices are not fit for their ordinary and intended uses.

242. Defendants actually knew about all of the above facts.

243. At all relevant times, Defendants fraudulently and deceptively concealed their failure to adequately research or test the Recalled Devices to assess their safety before marketing to susceptible users.

244. Defendants further falsely represented the nature and risks associated with the Recalled Devices, and their marketing and strategy regarding the same, in general statements to the media, general public, and federal agencies.

245. Defendants' misrepresentations and omissions were material facts that were essential to Plaintiff's decision making when purchasing and using the Subject Devices.

246. Plaintiff Etta Gay Fortney was completely unaware that Defendants were concealing these material facts.

247.     Defendants intentionally deceived and concealed material information concerning the safety of the Recalled Devices from Plaintiff and the general public, which had a direct impact on Plaintiff's and consumers' health and wellbeing.

248.     Plaintiff Etta Gay Fortney relied to her detriment on Defendants' fraudulent concealment and omissions. Had Plaintiff been adequately informed of the material facts regarding the safety of the Recalled Devices, and not intentionally deceived by Defendants, she would not have acquired/purchased, used, or been injured by the Subject Devices.

249.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff Etta Gay Fortney suffered from lung cancer and her untimely death for which her estate is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

## COUNT XI - CIVIL CONSPIRACY

250.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

251.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

252.     Defendants knowingly agreed, contrived, confederated, and/or conspired to defraud Plaintiff and consumers of the Recalled Devices regarding the true nature of the devices and their potential to cause serious injuries associated with the PE-PUR foam's particles and chemicals when the devices were used in a reasonably foreseeable manner.

253.     Defendants knowingly agreed, contrived, confederated, and/or conspired to defraud Plaintiff and consumers of the Recalled Devices with the purpose of maintaining the popularity and reputation of the devices and therefore maintaining high sales, at the expense of consumer safety.

254.     At all relevant times, pursuant to and in furtherance of said conspiracies, the Defendants performed the following overt and unlawful acts.

255.     Defendants designed and sold the Recalled Devices with full knowledge that the devices were not a safe way to treat sleep apnea.

256.     Upon information and belief, despite available medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously delayed reporting to the public the issues and delay the product recall. In the meantime, Defendants continued to represent the Recalled Devices as safe and omitted warnings about serious side effects.

257.     Plaintiff Etta Gay Fortney and the general public reasonably relied upon the aforementioned fraudulent representations, omissions, and concealments made by the Defendants regarding the nature of the Recalled Devices.

258.     Were it not for Defendants' unlawful actions to mislead the public and limit the natural dissemination of scientific research and knowledge on the dangers and harms associated with the Recalled Devices, Plaintiff Etta Gay Fortney and the general public could have learned of the dangers at an earlier date and prevented their introduction to and use of the devices.

259.     As a direct and proximate result of Defendants' overt unlawful acts regarding the nature of the Recalled Devices which were made pursuant to and in furtherance of a common scheme, and Plaintiff Etta Gay Fortney's reliance thereon, Plaintiff suffered from lung cancer and her untimely death for which her estate is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorney fees.

## COUNT XII - UNJUST ENRICHMENT

260.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

261.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

262.     At all relevant times, Defendants designed, manufactured, assembled, inspected, tested (or not), packaged, labeled, marketed, advertised, promoted, supplied, distributed, sold and/or otherwise placed the Recalled Devices into the stream of commerce, and therefore owed a duty of reasonable care to avoid causing harm to those that used the devices, such as Plaintiff.

263.     Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading marketing, promotions, and advertisements that failed to discuss the unreasonable risks of substantial bodily injury resulting from the use of the Recalled Devices. Defendants were also unjustly enriched through their developing, manufacturing, promoting, and selling the Recalled Devices without adequately testing and investigating their potential side effects and health impacts.

264.     Defendants requested and received a measurable benefit at the expense of Plaintiff in the form of payment for the Subject Devices.

265.     Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiff Etta Gay Fortney conferred onto Defendants at Plaintiff's detriment. These benefits were the expected result of Defendants acting in their pecuniary interests at the expense of its customers.

266.     There is no justification for Defendants' enrichment. It would be inequitable, unconscionable, and unjust for Defendants to be permitted to retain these benefits because the benefits were procured as a result of their wrongful conduct.

267.     Defendants wrongfully obfuscated the harm caused be their conduct. Thus, Plaintiff, who mistakenly enriched Defendants by relying on Defendants' fraudulent representations, could not and did not know the effect that using the Subject Devices would have on Plaintiff's health.

268.     Acceptance of the benefit by Defendants under these circumstances would be inequitable.

269.     Plaintiff's estate is entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiff to the position she occupied prior to dealing with Defendants. Given the importance of respiratory health and severity of injuries the Subject Devices can cause, Defendants were reasonably notified that Plaintiff would expect compensation from Defendants' unjust enrichment stemming from their wrongful actions.

## COUNT XIII - BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

270.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

271.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

272.     At all relevant times, Defendants, through their advertising and promotional materials, expressly and impliedly warranted and affirmed that the Recalled Devices' purpose was to offer a reasonably safe treatment for sleep apnea and similar health problems.

273.     Defendants touted the Recalled Devices as safe, despite knowingly having never adequately researched or tested the devices to assess their safety before placing the devices on the market and promoting them to consumers.

274.     Defendants intended to make Plaintiff Etta Gay Fortney and the general public believe the Recalled Devices were safe.

275. Defendants knowingly misled Plaintiff Etta Gay Fortney and the general public to believe the Recalled Devices were safe for use, despite knowing that the devices could lead to serious injuries, all of which Defendants knew, or by the exercise of reasonable care, should have known, ordinary consumers such as Plaintiff would be victim to.

276. At all relevant times, Defendants had knowledge of the hazards and health risks posed by the Recalled Devices when used.

277. At all relevant times, Defendants willfully failed to disclose the defects and health risks of the Recalled Devices to Plaintiff Etta Gay Fortney and the consuming public.

278. Plaintiff Etta Gay Fortney relied to her detriment on the information publicized by Defendants.

279. In reliance upon these implied warranties as to the safety of the Subject Devices by Defendants, Plaintiff Etta Gay Fortney acquired/purchased and used the Subject Devices, believing that the Subject Devices were inherently safe.

280. Plaintiff Etta Gay Fortney notified Defendants of the breach.

281. As a direct and proximate Defendants' warranties concerning the Subject Devices, as described herein, Plaintiff was diagnosed with lung cancer and suffered an untimely death for which Plaintiffs suffered from the injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## COUNT XIV - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

282. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

283. Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

284. At all relevant times Defendants have been a merchant in regard to the Recalled Devices they created and sold to consumers.

285. Defendants breached their implied warranty of merchantability since the Recalled Devices were defective when created and designed, and do not conform with the promises represented on their labels.

286. Defendants failed to comply with merchantability requirements, as the Recalled Devices do not achieve the ordinary purposes they advertise: a healthy treatment for respiratory conditions such as sleep apnea.

287. Beyond Defendants' own direct sales of the Recalled Devices, Plaintiff and other consumers are third-party beneficiaries of Defendants' agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of the Recalled Devices to consumers. Plaintiffs and consumers are the intended beneficiaries of Defendants' implied warranties since the Recalled Devices are manufactured with the express and intended purpose of selling the devices to consumers.

288. As a direct and proximate result of Defendants' breach of their implied warranties of merchantability regarding the Subject Devices, Plaintiff was damaged because, had she been aware of the unmerchantable condition of the Subject Devices, she would may have not

acquired/purchased the Subject Devices and not suffered injuries and damages from their use, for which her estate is entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## COUNT XV - BREACH OF EXPRESS WARRANTIES

289.    Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

290.    Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' lung cancer and untimely death, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

291.    Defendants, through their advertising, promotional materials and labeling, expressly warranted and affirmed that the Subject Devices were safe for their intended uses and for uses which were reasonably foreseeable.

292.    Defendants' representations became a basis of the bargain.

293.    Defendants made express warranties which extended beyond delivery of the Recalled Devices, including the Subject Devices, and expressly warranted for future performance of the devices. Defendants advertised, promoted and labeled the Subject Devices as being safe and effective for the treatment of sleep apnea.

294.     At all relevant times, Defendants breached said express warranties in that the Recalled Devices, including the Subject Devices, were unsafe and caused severe injury.  Plaintiff foreseeably used the Subject Devices without knowing of the harmful and substantial consequences to her health.

295.     At all relevant times, Defendants had knowledge of the hazards and health risks posed by the Recalled Devices, including the Subject Devices, when used.

296.     At all relevant times, Defendants willfully failed to disclose the defects and health risks of the Subject Devices to Plaintiff Etta Gay Fortney, her healthcare providers and the rest of the public that used the Recalled Devices.

297.     In reliance upon the express warranties made by Defendants, Plaintiff Etta Gay Fortney acquired/purchased and used the Subject Devices, believing the Subject Devices were inherently safe and/or a safe treatment for sleep apnea.

298.     As a direct and proximate result of Defendants' breach of their express warranties concerning the Subject Devices, Plaintiff Etta Gay Fortney was diagnosed with lung cancer, suffered serious physical, emotional and mental injury, harm, damages, economic loss, and an untimely death.

## COUNT XVI – WRONGFUL DEATH

299.     Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

300.     Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to

exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

301.    Plaintiffs also pleads this count under W. Va. Code §§ 55-7-6;8.

302.    As a direct and proximate cause of the aforementioned conduct, Defendants caused Plaintiffs' wrongful death, and Plaintiffs are entitled to recover for: A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the Plaintiff Etta Gay Fortney; (B) compensation for reasonably expected loss and services, protection, care and assistance provided by Plaintiff Etta Gay Fortney; (C) expenses for the care, treatment and hospitalization of Plaintiff Etta Gay Fortney as a result of her diagnosis of lung cancer resulting in her untimely death; and (D) reasonable funeral expenses.

## COUNT XVII - SURVIVAL

303.    Plaintiff adopts and incorporates by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

304.    Plaintiff pleads this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiff's injuries, exercised substantial control over the Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

305.    Plaintiffs also pleads this count under W. Va. Code §§ 55-7-8a(c).

306. As a direct and proximate cause of the aforementioned conduct of Defendants, Plaintiff Etta Gay Fortney suffered severe injury, including lung cancer, which caused her untimely death.

307. Plaintiff Etta Gay Fortney's claims for damages as a result of Defendants' conduct survive her death and may be brought by the Executor of her estate, Plaintiff Tom Fortney.

## COUNT XIII – LOSS OF CONSORTIUM

308. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

309. At all times mentioned, Plaintiffs Tom Fortney and Etta Gay Fortney were and are legally married and husband and wife.

310. As a direct and proximate cause of the aforementioned conduct of Defendants and as a result of the injuries and damages to Plaintiff Etta Gay Fortney, Plaintiff Tom Fortney has been deprived of the love, companionship, comfort, affection, society, solace or moral support, protection, loss of enjoyment of sexual relations and loss of physical assistance in the operation and maintenance of the home, of his wife, Plaintiff Etta Gay Fortney and has thereby sustained and will continue to sustain damages.

## COUNT XIX - PUNITIVE DAMAGES

311. Plaintiffs adopt and incorporate by reference all of the foregoing language of this Complaint as if fully set forth herein and further states as follows.

312. Plaintiffs plead this count and all other counts under W. Va. Code § 55-7-31(b)(1)–(2);(4);(6);(8), as upon information and belief, Defendants had actual knowledge of the defects alleged and which caused Plaintiffs' injuries, exercised substantial control over the

Subject Devices, made express warranties about the safety of the Subject Devices, failed to exercise reasonable care over the Subject Devices, and the parent companies of Philips RS controlled the manufacture of Subject Devices.

313.     Defendants' conduct described herein consisted of oppression, fraud and/or malice, and was done with advance knowledge, conscious disregard of the safety of others and/or ratification by Defendants' officers, directors, and/or managing agents.

314.     Despite their knowledge of the propensity of the Recalled Devices to cause serious injuries, Defendants chose profits over the safety of its consumers and American citizens suffering with sleep apnea when they sought to create and market devices posing significant health risks.

315.     Despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants intentionally and recklessly failed to adequately warn the public, physicians and the medical community.

316.     Further, despite having substantial information about the Recalled Devices' serious and unreasonable side effects, Defendants failed to make the decision to pull the devices from the market after receiving indications and after receiving reports from consumers who were experiencing serious injuries associated with the use of the devices.

317.     Defendants downplayed and recklessly disregarded their knowledge of the defective nature of the Recalled Devices' potential for causing serious injuries.

318.     Defendants chose to do nothing to warn the public or medical community when they knew about serious and undisclosed side effects associated with the Recalled Devices.

319. Defendants recklessly failed to warn and adequately instruct physicians, including Plaintiff's physician, regarding the increase in reports from consumers who were experiencing serious injuries associated with the use of the Recalled Devices.

320. Defendants' acts were willful, wanton and malicious and showed a total disregard for human life and human suffering.

321. Such conduct justifies and aware for punitive damages in an amount sufficient to punish Defendants' conduct and deter like conduct by Defendants and other similarly situated entities in the future.

322. Consequently, Defendants are liable for punitive damages in an amount to be determined by the jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against the Defendants jointly and severally for damages, including punitive damages if applicable, to which they are entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a.    Judgment for Plaintiffs and against Defendants;
b.    Damages to compensate Plaintiff Etta Gay Fortney for her injuries, economic losses and pain and suffering sustained as a result of the use of Defendants' Subject Devices;
c.    For Plaintiff Tom Fortney damages for loss of consortium;
d.    Survival;
e.    Wrongful death;
f.    Pre and post judgment interest at the lawful rate;
g.    Punitive damages, if applicable, on all applicable Counts as permitted by the law;
h.    A trial by jury on all issues of the case;
i.    An award of attorneys' fees and costs; and
j.    For any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and as to all issues.

Respectfully Submitted:


/s/ Jonathan D. Orent
Jonathan D. Orent (Local Counsel)
MA BBO # is 660571
MOTLEY RICE LLC
55 Cedar Street, Suite 100
Providence, RI 02903
(401) 457-7700 (Phone)
(401) 457-7723 (Fax)
jorent@motleyrice.com

Kimberly D. Barone Baden (Interim Co-Lead Counsel)
kbarone@motleyrice.com
Ann E. Rice Ervin
ariceervin@motleyrice.com
Roger M. "Hank" Young
hyoung@motleyrice.com
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843) 216-9000 (Phone)
(843) 216-9635 (Fax)

Attorneys for Plaintiffs

Dated: December 7, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

By:   <u>/s/ Jonathan D. Orent</u>
Jonathan D. Orent
